[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION TO VACATE ARBITRATION AWARD
CT Page 9426
The plaintiff union and the defendant employer are parties to a collective bargaining agreement that obligates them to arbitrate disputes arising out of their agreement. The dispute here involves the question of whether or not the employer is required to continue to make a $1000 per year payment, known as a SCOPE anomaly payment, to James Puchalski, a union member who is the individual grievant.
The parties submitted their dispute to arbitration and the arbitrator rendered her award in June 9, 1999. The arbitrator found that there had been no violation of the collective bargaining agreement by the failure of the defendant to continue to make such annual payments to the grievant. Pursuant to Conn. Gen. Stat. § 52-418 et seq., the plaintiff has applied to vacate the award and to have the matter reheard. The defendant opposes the application.
The dispute has its origins in a revised salary structure put in place in 1992 by the parties as a result of the institution of statewide Objective Job Evaluations (OJE). The new salary structure created a situation in which it was possible for a union member who had obtained professional certification after the institution of the OJE to "leapfrog" for salary classification purposes over employees who had obtained their certification before the implementation of OJE. The parties agreed to address this perceived unfairness through a written Memorandum of Understanding, incorporated into their contract, that read:
 Employees on the master list of individuals who were negatively impacted by the pay plan anomalies caused by the implementation of the 1992 OJE settlement shall receive a $1000 premium payment on or about December 1 of each year, beginning in 1995, provided the employee is still employed by the employer in the bargaining unit as of September 1, 1996. Said participants shall continue to receive said premium until: a.) promotion from the affected position(s), or b.) separation from the bargaining unit.
The affected employee on whose behalf this arbitration was demanded was initially an employee placed on the master list of individuals who were negatively impacted. He received a premium payment for the year 1996-97. CT Page 9427 He was thereafter demoted from a Department Head to the position of VS Instructor, effective with the 1997-98 school year. During that school year, he obtained his professional certification so that he advanced a full step in salary. At that point he ceased to be one of the bargaining unit employees who was "" negatively impacted by the pay plan anomalies" and became one of the bargaining unit employees who "leapfrogged" over others. Despite this, the union claims that he ought still be entitled to the $1000 annual anomaly payment, in perpetuity one supposes, unless he receives an actual promotion or separates from the bargaining unit.
The arbitrator found that this was the type of situation that required the taking of evidence about past practice. The arbitrator found that the union had previously conceded that some situations such as that of the grievant were not precisely addressed by the language of the Memorandum of Understanding. The arbitrator found that the subsequent written correspondence of the parties indicated that the circumstances of one such as the grievant would be reviewed on a case by case basis to determine if the individual was still "negatively impacted" by the implementation of the OJE. Here the arbitrator found that the individual, now receiving an increase in salary largely because of the implementation of the OJE, was no longer disadvantaged by it. Accordingly, using the language of the Memorandum and the subsequent practice of the parties, the arbitrator determined that the grievant was no longer entitled to the anomaly payment since he was no longer caught in an anomaly, and accordingly found no violation of the collective bargaining agreement by the employer.
The plaintiff challenges the actions of the arbitrator under Conn. Gen. Stat. § 52-418 (a)(4) which provides that the Superior Court shall vacate an arbitration award "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The plaintiff claims that the arbitrator exceeded her powers by misinterpreting the language of the contract.
The scope of judicial review in a matter such as this is limited. When the submission is, as here, unrestricted, the court's inquiry is limited to whether the award conform's to the submission. Waterbury v. WaterburyPolice Union, 176 Conn. 401, 405 (1979). The court will not review the evidence before the arbitrator nor the arbitrator's decision on legal questions. Meyers v. Lakeridge Development Co., 173 Conn. 133, 135
(1977); American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 186
(1987). Rather the court looks to see if the submission conforms to the award. Milford Employees Association v. Milford, 179 Conn. 678, 683
(1980). CT Page 9428
The arbitrator was asked to decide if the employer violated the parties' agreement by denying the anomaly payment to the grievant. The arbitrator answered that there was no violation. Such a determination was within the scope of the submission and is not grounds to vacate the award.
Moreover to the extent the plaintiff's claim is that the arbitrator exceeded her authority by relying on evidence of how the parties had treated the disputed clause in practice, the plaintiff's claim is without merit. Connecticut courts have permitted reliance on extrinsic evidence when a latent ambiguity arises in a collective bargaining agreement. SeeBallato v. Board of Education, 33 Conn. App. 78, 88 (1993).
The plaintiff has failed to show any factors that would warrant vacating the arbitration award. Accordingly, the Application to Vacate the Award is denied.
Patty Jenkins Pittman, Judge